AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

1715 Bladensburg Road, N.E.
d/b/a ACE Imports
Washington, DC

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:

(Further described below)

I ____Diane Eickman_____ being duly sworn depose and say:

I am a(n)____Criminal Special Investigator, United States Attorney's Office_____ and have reason to believe
(Official Title)

that ☐ on the person of or ☒ on the property or premises known as   (name, description and or location):
1715 Bladensburg Rd, NE, Washington, D.C., ACE Imports consists of a used car lot surrounded by a chain link fence
that has a white sign with black letters attached to the fence at the corner of Rand Place, N.E. and Bladensburg Rd, N.E.
that reads, "ACE IMPORTS QUALITY USED CARS (202) 398-5280." The only structure on the lot is a single wide
trailer believed to be the office for ACE Imports. The sides of the trailer are white with glass windows, the top is brown
and the entrance to the trailer is a glass door located in the center of the trailer which faces Bladensburg Rd, N.E. Near
the top of the glass entrance door in the center are white numbers that read "1715". The entrance to both the lot and
office is gained through a gate in the chain link fence located on the Rand Place, N.E. side of the property. On the right
side of the entrance gate there is a white sign with red letters that reads "WALK IN RIDE OUT."

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be
searched)
**See attached Affidavit and included Attachments A through C made a part thereof.**

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)

**See attached Affidavit and included Attachments A through C made a part thereof.**

concerning a violation of Title _31_ United States Code, Section(s) _5324(a)_. The facts to support a finding of Probable
Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.      ☒ YES   ☐ NO

Diane Lucas
Assistant United States Attorney
(202) 353-8055

Signature of Affiant
Diane Eickman, Criminal Special Investigator
United States Attorney's Office, District of Columbia

Sworn to before me, and subscribed in my presence

_____
Date

at Washington, DC

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Diane Eickman, after being duly sworn, do depose and state:

1. I am a Criminal Investigator with the United States Attorney's Office for the District of Columbia and have been employed in this capacity since September 1999. On July 10, 2007, I received a special deputation appointment "under authority delegated by the Attorney General, to perform the duties of the Office of Special Deputy United States Marshal as directed by an appropriate official of the United States Marshals Service or some other appropriate Federal Official as so designated." My appointment allows me "[t]o seek and execute arrest and search warrants supporting a federal task force." The sponsoring agency for this appointment was the Internal Revenue Service which authorized me to investigate possible violations of Title 31 of the United States Code. Pursuant to Fed. R. Crim. P. 4(c)(1), "Only a marshal or other authorized officer may execute a warrant." In addition, on December 7, 2005, I received a special deputation appointment by the United States Marshals Service which appointed me as a Special Deputy Marshal and authorized me "[t]o investigate other Title 18 violations, and to make arrest and execute search warrants." I was a Special Agent with the U.S. Department of State from March 1989 until September 1999. My duties at the United States Attorney's Office for the District of Columbia include the investigation of possible criminal violations of Title 18 of the United States Code. I have personally conducted and assisted in numerous investigations of possible violations of various sections of Title 18, including violations of 18 U.S.C. §§ 1956, 1957, and 1960 and 31 U.S.C. § 5324. In addition, I completed Basic Criminal Investigator training at the Federal Law Enforcement Training Center in Brunswick, Georgia in May 1989. I have also attended training courses and seminars related to money laundering and the Bank Secrecy Act.

2.  I am a member of a federal task force, led by special agents of the Internal Revenue Service, that is conducting financial investigations of possible currency structuring violations. Unless otherwise stated, the information in this affidavit is either personally known to me or has been provided to me by other law enforcement officers and/or is based on a review of various documents and records as more particularly described herein.

3.  This affidavit is being submitted in support of an application for a search warrant to search:

**The office of ACE Imports located in a trailer on a used car sales lot at 1715 Bladensburg Road N.E., Washington, D.C. 20002.**  ACE Imports consists of a used car lot surrounded by a chain link fence.  There is a white sign with black letters attached to the fence at the corner of Rand Place, N.E. and Bladensburg Road, N.E. that reads, "ACE IMPORTS QUALITY USED CARS (202) 398-5280."  The only structure on the used car sales lot is a single wide trailer and is believed to be the office for ACE Imports.  The sides of the trailer are white with glass windows and the top of the trailer is brown.  The entrance to the trailer is a glass door located in the center of the trailer that faces Bladensburg Road, N.E.  Near the top of the glass entrance door in the center are white numbers that read "1715".  The entrance to the used car sales lot and the office is gained through a gate in the chain link fence located on the Rand Place, N.E. side of the property.  On the right side of the entrance gate there is a white sign with red letters that reads "WALK IN RIDE OUT."  There are currently a number of cars sitting on the used car lot.

4.   The facts and information contained in this affidavit are based on my personal knowledge and observations, as well as upon information received from other individuals, to include other law enforcement officers who are assisting with this investigation, and my review

2

of records and documents obtained during this investigation.  Based upon the investigation described below, I submit that the facts set forth in the affidavit establish that there is probable cause to believe that:

a)    in the District of Columbia during the time period from at least beginning in August, 2004, and continuing through present, ACE Imports and/or Jeffrey O. Ogunbiyi committed offenses, among others, in violation of 31 U.S.C. Section 5324(a) (Structuring); and

b)    evidence, fruits and instrumentalities of the foregoing violations are presently located at or within the business office of ACE Imports located in a trailer on a used car lot at 1715 Bladensburg Road N.E., Washington, D.C.

**BACKGROUND INFORMATION AND STATUTORY AUTHORITY**

5.   On March 28, 2008, a seizure warrant was issued by the District Court for the

District of Columbia for any and all funds up to the amount $282,900 contained in Bank of

America, N.A. account number XXXX-XXXX-1529, held in the name of ACE Imports.  ACE

Imports is located at 1715 Bladensburg Road NE, Washington, D.C. 20002.  The Court found

that probable cause exists to believe that such funds are subject to seizure and forfeiture to the

United States pursuant to 31 U.S.C. §5317(c)(2) (incorporating 18 U.S.C. §§ 981 and 984),

because these funds either constitute property involved in, or traceable to, deposits structured to

evade currency reporting requirements, in violations of 31 U.S.C. § 5324(a), or these funds may

be seized in place of such property, because they represent the same or fungible property found

in the same place or account from which the property involved in the offenses was deposited,

within the one year period after April 2, 2007.

6.  31 U.S.C. § 5313 and the regulations promulgated by the Department of Treasury at

31 C.F.R. Part 103, *et seq*., require financial institutions that engage with customers in a

currency transaction (i.e. a deposit or withdrawal) in excess of $10,000 to report the transactions

to the Internal Revenue Service on FINCen Form 104 (formerly Form 4789), which is known as

a Currency Transaction Report ("CTR").  These regulations also require that multiple

transactions be treated as a single transaction if the financial institution has knowledge that the

multiple transactions are being made by, or on behalf of, the same person and they result in

either currency received or disbursed by the financial institution of more than $10,000 during

any one business day.

7.  CTRs are often used by law enforcement to uncover a variety of illegal activities,

including narcotics trafficking, money laundering, terrorist financing, and tax evasion.  Many

4

individuals involved in these types of illegal activities are aware of such reporting requirements and take active steps to prevent financial institutions from filing CTRs. These active steps are referred to as "structuring" or "smurfing" and involve, among other methods, a person or persons making multiple cash deposits, in amounts of or less than $10,000, to multiple banks and/or branches of the same bank on the same day or on consecutive days. Structuring cash deposits to evade financial reporting requirements is prohibited by 31 U.S.C. § 5324(a)(3).

8. In order to establish a violation of 31 U.S.C. § 5324(a), the government must prove that a person structured or assisted in structuring, or attempted to structure or assist in structuring, any transaction with one or more domestic financial institutions in amounts no greater than $10,000 for the purpose of evading the reporting requirements of section 5313(a) or any regulation prescribed under such sections.

9. Title 31 U.S.C. § 5317 provides for the civil and/or criminal forfeiture of any property involved in a violation of sections 5313, 5316, or 5324 of that title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy.

10. Title 18 U.S.C. § 984 provides that, in any forfeiture action *in rem* in which the subject property is cash [or] funds deposited into a financial institution, the government does not have to identify the specific property involved in the offense that is the basis for the forfeiture; it is no defense that said property has been removed and replaced by identical property; and identical property found in the same account as the property involved in the forfeiture offense is subject to forfeiture. In essence, § 984 allows the government to seize for civil forfeiture identical property found in the same place where the "guilty" property had been kept. Section 984 does not, however, allow the government to reach back in time for additional period; a forfeiture action against property not directly traceable to the offense that is the basis for the

5

forfeiture cannot be commenced more than one year from the date of the offense.

## INVESTIGATIVE FINDINGS

11.  ACE Imports is the trade name for EMO LLC, a used car sales business located at 1715 Bladensburg Road, N.E., Washington, D.C. 20002.  EMO LLC was organized in the District of Columbia on July 20, 2004.  The Articles of Organization state that the organizers of the limited liability company, Jeffrey O. Ogunbiyi, James E. Johnson, and Michael M. Awodiya, will operate a used car business.  On August 5, 2004, a Certification of Registration was issued to EMO LLC for the trade name ACE Imports.

12.  ACE Imports has a bank account at Bank of America N.A., account number XXXX-XXXX-1529.  The sole authorized signer on the account is Jeffrey O. Ogunbiyi.

13.  I have personally examined Bank of America, N.A. records from April 2, 2007 through October 30, 2007 related to account number XXXX-XXXX-1529.  My examination of account number XXXX-XXXX-1529 revealed that no single currency deposit ever exceeded $10,000.  The total amount of funds deposited into account number XXXX-XXXX-1529 between April 2, 2007 through October 30, 2007 was approximately $2,838,967.  Of that amount, approximately $2,401,374.32 appears to have been used to purchase vehicles.

14.  Bank records reveal that on or about August 25, 2004, a representative of Bank of America N.A. sent a letter to ACE Imports, addressed to Jeffrey O. Ogunbiyi, which notified the account holder in pertinent part:

> As you know, federal law requires that the Bank file a Currency Transaction Report for all cash transactions over $10,000.  It also prohibits multiple transactions of lesser amounts for the purpose of avoiding this reporting requirement; this is called "structuring"...
>
> A recent review of your account reveals that you might be "structuring" your transactions in order to avoid this reporting requirement...

6

15.  The attached Exhibit A details the currency (cash) deposit activity of account XXXX-XXXX-1529 from April 2, 2007 through October 30, 2007.  Between April 2, 2007 and October 30, 2007, there were approximately 74 cash deposits, all under $10,000, totaling $527,105 into account XXXX-XXXX-1529.

16.  There were six days in which two separate deposits under $10,000 were made in a single day into account XXXX-XXXX-1529, totaling $83,810.  For example, on August 13, 2007, a deposit in the amount of $9,840 was made at 11:50 a.m. at the Bank of America branch located at 722 H Street, NE, Washington, D.C.  A second deposit in the amount of $9,000 was made at 1:19 p.m. at the same branch.

17.  The following is a chart of same day cash deposits between April 2, 2007 and October 30, 2007.

| Day | Date | Time | Cash Deposit | Day Total | Branch |
|---|---|---|---|---|---|
| Monday | 4/2/07 | 12:22 pm | $7,500 | | Bowie Town |
| Monday | 4/2/07 | unknown | $2,000 | $9,500 | |
| Tuesday | 5/29/07 | 3:35 pm | $9,260 | | 722 H St.NE |
| Tuesday | 5/29/07 | unknown | $6,000 | $15,260 | Bowie |
| Monday | 7/2/07 | 11:52 am | $7,000 | | Bowie |
| Monday | 7/2/07 | 3:01 pm | $4,000 | $11,000 | 722 H St.NE |
| Monday | 8/6/07 | 10:58 am | $6,990 | | 722 H St. NE |
| Monday | 8/6/07 | 2:47 pm | $4,500 | $11,490 | 722 H St NE |
| Monday | 8/13/07 | 11:50 am | $9,840 | | 722 H St NE |
| Monday | 8/13/07 | 1:19 pm | $9,000 | $18,840 | 722 H St. NE |
| Monday | 9/10/07 | 12:09 pm | $9,720 | | Bowie |
| Monday | 9/10/07 | 12:13 pm | $8,000 | $17,720 | 722 H St. NE |

18.  Of the 74 deposits, I was able to identify and confirm that on 15 occasions cash deposits of amounts under the $10,000 threshold were made on consecutive days.  For example, on May 7, 2007, at 1:39 p.m. $9,350 in cash was deposited into account XXXX-XXXX-1529.  On the next day, May 8, 2007, $9,000 in cash was deposited into the account.

19.  The following is a chart of consecutive day cash deposits between April 2, 2007 and October 30, 2007 into the account.  The total amount of the consecutive day cash deposits into account number XXXX-XXXX-1529 was $199,090.  The two April 2, 2007 deposits totaling $9,500, the two August 6, 2007 deposits totaling $11,490, and the two August 13, 2007 deposits totaling $18,840 were not included in this figure because they were accounted for in the same day total figure above in paragraph 17.

| Day | Date | Time | Amount | Branch |
| --- | --- | --- | --- | --- |
| Monday | 4/2/07 | 12:22 pm, unk. | $7,500, $2,000 | Bowie, unk. |
| Tuesday | 4/3/07 | 2:53 pm | $8,000 | Port Towns |
| Tuesday | 4/10/07 | 4:39 pm | $6,000 | 722 H St NE |
| Wednesday | 4/11/07 | 3:10 pm | $7,950 | 722 H St NE |
| Thursday | 4/12/07 | 4:04 pm | $9,600 | 722 H St NE |
| Friday | 4/13/07 | 3:51 pm | $9,600 | 722 H St NE |
| Monday | 5/7/07 | 1:39 pm | $9,350 | 722 H St NE |
| Tuesday | 5/8/07 | 2:40 pm | $9,000 | Bowie Town |
| Monday | 5/21/07 | unknown | $9,000 | Bowie Town |
| Tuesday | 5/22/07 | 12:48 pm | $9,800 | 722 H St NE |
| Thursday | 5/24/07 | 4:28 pm | $9,800 | 722 H St NE |
| Friday | 5/25/07 | unknown | $9,200 | Bowie Town |
| Thursday | 5/31/07 | 4:21 pm | $9,800 | 722 H St NE |
| Friday | 6/1/07 | 1:24 pm | $9,750 | 722 H St NE |

| Wednesday | 7/18/07 | 4:10 pm | $4,200 | 722 H St NE |
|---|---|---|---|---|
| Thursday | 7/19/07 | 4:08 pm | $7,000 | 722 H St NE |
| Friday | 7/20/07 | 3:53 pm | $8,000 | 722 H St NE |
| Monday | 7/23/07 | 12:32 pm | $9,000 | 722 H St NE |
| Tuesday | 7/24/07 | 12:55 pm | $9,000 | 722 H St NE |
| Monday | 8/6/07 | 10:58 am | $6,990 | 722 H St NE |
| Monday | 8/6/07 | 2:47 pm | $4,500 | 722 H St NE |
| Tuesday | 8/7/07 | 11:31 am | $4,300 | 722 H St NE |
| Wednesday | 8/8/07 | 2:53 pm | $5,800 | 722 H St NE |
| Monday | 8/13/07 | 11:50 am | $9,840 | 722 H St NE |
| Monday | 8/13/07 | 1:19 pm | $9,000 | 722 H St NE |
| Tuesday | 8/14/07 | 1:35 pm | $9,790 | 722 H St NE |
| Tuesday | 9/4/07 | unk. | $4,000 | Bowie |
| Wednesday | 9/5/07 | 4:21 pm | $6,000 | 722 H St NE |
| Monday | 10/1/07 | unk | $6,150 | 722 H St NE |
| Tuesday | 10/2/07 | 3:08 pm | $9,000 | 722 H St NE |

20.  Based on my training and experience, I know that multiple cash deposits in amounts ranging between $7,000 and $10,000 over a short period of time can indicate the breaking up of a larger amount of money into smaller deposits to avoid triggering the filing of a CTR (mandatory for amounts in excess of $10,000).  In short, this kind of activity is indicative of structuring.  Based on my experience, there is probable cause to believe that the business is accumulating cash and depositing it piecemeal in such a manner so as to not trigger a CTR.

21.  The Financial Crimes Enforcement Network (FinCEN) is responsible for administering the Bank Secrecy Act.  In furtherance of this mission, FinCEN maintains a database of Bank Secrecy Act forms, including Form 8300, entitled "Report of Cash Payments

Over $10,000 Received in a Trade or Business."  A review of the FINCEN database does not

reveal that ACE Import has filed any Form 8300s since the business was organized.

**BASIS TO SEARCH BUSINESS OFFICE OF ACE IMPORTS**

22.  I have personally observed the business known as ACE Imports located at 1715

Bladensburg Road, N.E., Washington, D.C. 20002.  This used car sales business is located at the

corner of Bladensburg Road, N.E. and Rand Place, N.E., Washington, D.C.  ACE Imports

consists of a used car lot surrounded by a chain link fence.  There is a white sign with black

letters attached to the fence at the corner of Rand Place, N.E. and Bladensburg Road, N.E. that

reads, "ACE IMPORTS QUALITY USED CARS (202) 398-5280."  The only structure on the

used car sales lot is a single wide trailer and is believed to be the office for ACE Imports.  The

sides of the trailer are white with glass windows and the top of the trailer is brown.  The entrance

to the trailer is a glass door located in the center of the trailer that faces Bladensburg Road, N.E.

Near the top of the glass entrance door in the center are white numbers that read "1715."  The

entrance to the used car sales lot and the office is gained through a gate in the chain link fence

located on the Rand Place, N.E. side of the property.  On the right side of the entrance gate there

is a white sign with red letters that reads "WALK IN RIDE OUT."  There are currently a number

of cars sitting on the used car lot.

a) Based on your affiant's knowledge and experience it is common for used car

dealerships to maintain records on premises (in written and electronic form) regarding the sale

and purchase of cars including invoices, books, computers, notes, receipts, contracts, ledgers,

financial statements, schedules, spreadsheets, bill of sales, liens, payment records, tax records,

temporary tags, contracts, bank statements, check registers, canceled checks, deposit items,

accounting ledgers, "Report of Cash Payments Over $10,000 Received by a Trade or Business"

Form 8300s, financing statements, and billing statements.  These records permit the dealership to account for the sales and purchases of cars which are the purported source of the deposits into Bank of America account number XXXX-XXXX-1529.  It is also your affiant's understanding that individuals who are a sole proprietorship or a limited liability corporation maintain records related to the operations and profitability of the business in compliance with requirements of the Internal Revenue Service.  Such records, written as well as in electronic form, include, but are not limited to, notes, ledgers, schedules, agreements, bank account statements, canceled checks, deposit items, financial statements, spreadsheets, financial reports, check registers, and tax records.

b)  In addition, your affiant knows that it is common to maintain and store the aforementioned evidence of financial crimes on electronic (computer) storage devices.  To promptly retrieve and analyze all electronically stored computer data, to ensure accuracy and completeness of such data, and to prevent the loss of the data either from accidental or programmed destruction, requires a laboratory analysis by a qualified computer specialist.  To effect such accuracy and completeness requires the seizure of all computer equipment and peripherals, the software to operate them, and related instruction manuals.

23.  Based upon your affiant's personal experience and information provided by other law enforcement agents and investigators with specialized knowledge related to computer forensics, she knows the following to be true.

a)  Computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation because the objects themselves may be instrumentalities, fruits, or evidence of criminal activities, and/or  they may have been used to collect and store information about criminal activities.

11

b)  Components of a personal computer normally include the Central Processing Unit (CPU), a monitor which is commonly referred to as a "screen," a keyboard and any storage devices, e.g., hard disk drive, compact disks, or USB flashdrive.  Further, your affiant knows that a computer may include a device known as a modem which enables the computer to communicate with other computers equipped with a modem via telephone lines to either a network, main frame server, or other desktop computer(s).  Your affiant knows that some modems may be described as a small external component with lights on the front and a telephone line running from this item to a telephone jack in the wall.  Your affiant knows that modems may also be installed inside of a computer.  Your affiant knows that a modem is capable of sending and receiving electromagnetic signals generated by a computer across telephone lines to another modem and then to another computer to which a second modem is attached, thus communicating data from the sending computer to the receiving computer or vice versa.

c)  It is common for a computer user to situate computer peripherals, computer software, instructions, records, backed up data files, and the like, in the immediate area of a computer system.

d)  Computer hardware and computer software may be utilized to store records which include, but are not limited to, those relating to business activities, criminal activities, associate names and addresses, and the identity and location of assets illegally gained through criminal activity.  These records may be more fully described as information or data stored in the form of electronic or magnetic coding on computer media or on media capable of being read by a computer or computer-related equipment.  This media includes, but is not limited to, fixed hard disks, removable hard disk cartridges, zip drives, laser disks, magnetic tapes, floppy diskettes,

12

and other related media capable of storing magnetic coding.

e)  Computer hardware may be described as any and all electronic devices capable of creating, converting, displaying, transmitting or analyzing magnetic or electronic impulses or data.  These devices include, but are not limited to computers, computer peripherals, such as printers, modems, plotters, circuit boards, and other electronic devices.

f)  Computer software may be described as any and all programs or instructions capable of interpretation by a computer and related devices, which are stored in the form of magnetic or electronic media.  These items include, but are not limited to, application software, operating systems, programs, compilers, interpreters and other programming utilized to communicate with computer components.

g)  Computer instructions may be described as existing in the form of books, manuals, notes, and the like, which include, but are not limited to, written or printed material providing exemplars and instructions regarding the operation of computers, peripherals and software;

h)  To completely and accurately retrieve data maintained in computer hardware or on computer software, insure accuracy and completeness of such data, and prevent the loss of the data either from accidental or programmed destruction, it is necessary that all computer equipment, peripherals, related instructions in the form of manuals and notes, as well as the software utilized to operate such a computer, be seized and subsequently processed by a qualified computer specialist in a laboratory setting.

i)  Each computer file is the equivalent of a hard copy file, but possibly contains many pages of information.  By analogy to hard copy data, law enforcement agents and/or investigators will have to examine at least the first "page" of each such file in order to determine

13

the contents of the file, and whether the file is properly seizable under the warrant. In order to conduct this initial examination, your affiant proposes that the computer and its internal hard-drive, and related equipment be removed to the safekeeping of a law enforcement agency to permit examination of the contents of the hard-drive files to separate for thorough review only the magnetically stored documents within the scope of the warrant. The records in the hard-drive are inseparable, in the sense that no single record can be seized in its original form on the computer without seizing the hard-drive and the related equipment necessary to view the data.

j) A computer forensics specialist will also have to examine the system to determine whether any security devices have been installed to prevent copying of the records authorized to be seized or to cause their destruction within the system. The software programs used in connection with the data stored in the hard disk or on diskettes must also be examined by law enforcement agents and/or investigators in order to determine that they are in fact standard, commercially-available software, so that the computer forensics specialist may obtain identical programs, if necessary, for examining and copying the data files which contain records authorized to be seized. For the same reason, the system operating manuals and all documentation relating to the hardware or software must be examined by law enforcement agents and/or investigators in connection with the examination of the system. Temporary removal of the equipment from the premises during this examination is also necessary because computer-based evidence is quickly and easily destroyed.

## <u>CONCLUSION</u>

24.  For the reasons set forth above, your affiant believes there is probable cause to

believe that contained in the office of ACE Imports, located in a trailer at 1715 Bladensburg

Road, N.E., Washington, D.C. 20002; is evidence, instrumentalities, and fruits of crime, as fully

detailed in Attachment "B" to the search warrant which is incorporated herein as if fully stated,

and which constitute evidence of offenses in violation of 31 U.S.C. Section 5324 (Structuring).

The statements above are true and accurate to the best of my knowledge and belief.


_____
Diane Eickman
Criminal Investigator
U.S. Attorney's Office for
the District of Columbia


Sworn and subscribed before me
This _____ day of April, 2008.



_____
United States Magistrate Judge

**ACE Imports**
**Jeffrey O Ogunbiyi Prop**
**Account Number**
**0039-3301-1529**

| Day the Week | Date | Time of Transaction | Cash Deposit Amount | Total Amount of Cash Deposited in One Day | Address of Branch |
|---|---|---|---|---|---|
| Mon | 4/2/2007 | 12:22 PM | $ 7,500.00 | | Bowie Town Center, MD |
| | 4/2/2007 | Unk | $ 2,000.00 | $ 9,500.00 | Unk |
| Tues | 4/3/2007 | 2:53 PM | $ 8,000.00 | | Port Towns, MD |
| Wed | 4/4/2007 | 1:37 PM | $ 9,000.00 | | Blair Road |
| Thurs | 4/5/2007 | | | | |
| Fri | 4/6/2007 | | | | |
| Sat | 4/7/2007 | | | | |
| Sun | 4/8/2007 | | | | |
| Mon | 4/9/2007 | | | | |
| Tues | 4/10/2007 | 4:39 PM | $ 6,000.00 | | 722 H Street, NE, Washington, DC |
| Wed | 4/11/2007 | 3:10 PM | $ 7,950.00 | | 722 H Street, NE, Washington, DC |
| Thurs | 4/12/2007 | 4:04 PM | $ 9,600.00 | | 722 H Street, NE, Washington, DC |
| Fri | 4/13/2007 | 3:51 PM | $ 9,600.00 | | 722 H Street, NE, Washington, DC |
| Sat | 4/14/2007 | | | | |
| Sun | 4/15/2007 | | | | |
| Mon | 4/16/2007 | | | | |
| Tues | 4/17/2007 | | | | |
| Wed | 4/18/2007 | | | | |
| Thurs | 4/19/2007 | | | | |
| Fri | 4/20/2007 | 3:33 PM | $ 9,920.00 | | 722 H Street, NE, Washington, DC |
| Sat | 4/21/2007 | | | | |
| Sun | 4/22/2007 | | | | |
| Mon | 4/23/2007 | | | | |
| Tues | 4/24/2007 | 12:42 PM | $ 7,600.00 | | Mt. Rainer |
| Wed | 4/25/2007 | | | | |
| Thurs | 4/26/2007 | 1:31 PM | $ 9,500.00 | | 722 H Street, NE, Washington, DC |

| Day | Date | Time | | Amount | Location |
|---|---|---|---|---|---|
| Fri | 4/27/2007 | | | | |
| Sat | 4/28/2007 | | | | |
| Sun | 4/29/2007 | | | | |
| Mon | 4/30/2007 | Unk | $ | 4,800.00 | Bowie Town Center, MD |
| Tues | 5/1/2007 | | | | |
| Wed | 5/2/2007 | | | | |
| Thurs | 5/3/2007 | 5:00 PM | $ | 9,960.00 | 722 H Street, NE, Washington, DC |
| Fri | 5/4/2007 | | | | |
| Sat | 5/5/2007 | | | | |
| Sun | 5/6/2007 | | | | |
| Mon | 5/7/2007 | 1:39 PM | $ | 9,350.00 | 722 H Street, NE, Washington, DC |
| Tues | 5/8/2007 | 2:40 PM | $ | 9,000.00 | Bowie Town Center, MD |
| Wed | 5/9/2007 | | | | |
| Thurs | 5/10/2007 | 3:00 PM | $ | 9,800.00 | Port Towns |
| Fri | 5/11/2007 | | | | |
| Sat | 5/12/2007 | | | | |
| Sun | 5/13/2007 | | | | |
| Mon | 5/14/2007 | Unk | $ | 7,000.00 | 722 H Street, NE, Washington, DC |
| Tues | 5/15/2007 | | | | |
| Wed | 5/16/2007 | 2:39 PM | $ | 2,000.00 | Landover Hills, MD |
| Thurs | 5/17/2007 | 1:56 PM | $ | 4,500.00 | 722 H Street, NE, Washington, DC |
| Fri | 5/18/2007 | 4:28 PM | $ | 7,500.00 | Greenspring Station |
| Sat | 5/19/2007 | | | | |
| Sun | 5/20/2007 | | | | |
| Mon | 5/21/2007 | Unk | $ | 9,000.00 | Bowie Town Center, MD |
| Tues | 5/22/2007 | 12:48 PM | $ | 9,800.00 | 722 H Street, NE, Washington, DC |
| Wed | 5/23/2007 | | | | |
| Thurs | 5/24/2007 | 4:28 PM | $ | 9,800.00 | 722 H Street, NE, Washington, DC |
| Fri | 5/25/2007 | Unk | $ | 9,200.00 | Bowie Town Center, MD |

| Day | Date | Time | | Amount | | Total | Location |
|---|---|---|---|---|---|---|---|
| Sat | 5/26/2007 | | | | | | |
| Sun | 5/27/2007 | | | | | | |
| Mon | 5/28/2007 | | | | | | |
| Tues | 5/29/2007 | 3:35 PM | $ | 9,260.00 | | | 722 H Street, NE, Washington, DC |
| | 5/29/2007 | Unk | $ | 6,000.00 | $ | 15,260.00 | Bowie Town Center, MD |
| Wed | 5/30/2007 | | | | | | |
| Thurs | 5/31/2007 | 4:21 PM | $ | 9,800.00 | | | 722 H Street, NE, Washington, DC |
| Fri | 6/1/2007 | 1:24 PM | $ | 9,750.00 | | | 722 H Street, NE, Washington, DC |
| Sat | 6/2/2007 | | | | | | |
| Sun | 6/3/2007 | | | | | | |
| Mon | 6/4/2007 | | | | | | |
| Tues | 6/5/2007 | | | | | | |
| Wed | 6/6/2007 | | | | | | |
| Thurs | 6/7/2007 | | | | | | |
| Fri | 6/8/2007 | | | | | | |
| Sat | 6/9/2007 | | | | | | |
| Sun | 6/10/2007 | | | | | | |
| Mon | 6/11/2007 | | | | | | |
| Tues | 6/12/2007 | 3:23 PM | $ | 4,000.00 | | | 722 H Street, NE, Washington, DC |
| Wed | 6/13/2007 | | | | | | |
| Thurs | 6/14/2007 | Unk | $ | 4,000.00 | | | Greenspring Station |
| Fri | 6/15/2007 | | | | | | |
| Sat | 6/16/2007 | | | | | | |
| Sun | 6/17/2007 | | | | | | |
| Mon | 6/18/2007 | Unk | $ | 9,800.00 | | | Bowie Town Center, MD |
| Tues | 6/19/2007 | | | | | | |
| Wed | 6/20/2007 | | | | | | |
| Thurs | 6/21/2007 | 2:05 PM | $ | 5,450.00 | | | Port Towns |
| Fri | 6/22/2007 | | | | | | |
| Sat | 6/23/2007 | | | | | | |
| Sun | 6/24/2007 | | | | | | |
| Mon | 6/25/2007 | Unk | $ | 4,400.00 | | | Bowie Town Center, MD |
| Tues | 6/26/2007 | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Wed | 6/27/2007 | 4:45 PM | $ | 6,700.00 | | 722 H Street, NE, Washington, DC |
| Thurs | 6/28/2007 | | | | | |
| Fri | 6/29/2007 | Unk | $ | 9,700.00 | | Bowie Town Center, MD |
| Sat | 6/30/2007 | | | | | |
| Sun | 7/1/2007 | | | | | |
| Mon | 7/2/2007 | 11:52 AM | $ | 7,000.00 | | Bowie Town Center, MD |
| | 7/2/2007 | 3:01 PM | $ | 4,000.00 | $ 11,000.00 | 722 H Street, NE, Washington, DC |
| Tues | 7/3/2007 | 4:06 PM | $ | 6,050.00 | | 722 H Street, NE, Washington, DC |
| Wed | 7/4/2007 | | | | | |
| Thurs | 7/5/2007 | 4:06 PM | $ | 5,000.00 | | 722 H Street, NE |
| Fri | 7/6/2007 | 3:37 PM | $ | 9,970.00 | | 722 H Street, NE |
| Sat | 7/7/2007 | | | | | |
| Sun | 7/8/2007 | | | | | |
| Mon | 7/9/2007 | 2:31 PM | $ | 9,800.00 | | 722 H Street, NE, Washington, DC |
| Tues | 7/10/2007 | | | | | |
| Wed | 7/11/2007 | 4:47 PM | $ | 9,750.00 | | 722 H Street, NE, Washington, DC |
| Thurs | 7/12/2007 | | | | | |
| Fri | 7/13/2007 | 4:50 PM | $ | 6,000.00 | | 722 H Street, NE, Washington, DC |
| Sat | 7/14/2007 | | | | | |
| Sun | 7/15/2007 | | | | | |
| Mon | 7/16/2007 | 4:06 PM | $ | 1,000.00 | | 722 H Street, NE, Washington, DC |
| Tues | 7/17/2007 | | | | | |
| Wed | 7/18/2007 | 4:10 PM | $ | 4,200.00 | | 722 H Street, NE, Washington, DC |
| Thurs | 7/19/2007 | 4:08 PM | $ | 7,000.00 | | 722 H Street, NE, Washington, DC |
| Fri | 7/20/2007 | 3:53 PM | $ | 8,000.00 | | 722 H Street, NE, Washington, DC |

| | | | | | | |
|---|---|---|---|---|---|---|
| Sat | 7/21/2007 | | | | | |
| Sun | 7/22/2007 | | | | | |
| Mon | 7/23/2007 | 12:32 PM | $ | 9,000.00 | | 722 H Street, NE, Washington, DC |
| Tues | 7/24/2007 | 12:55 PM | $ | 9,000.00 | | 722 H Street, NE, Washington, DC |
| Wed | 7/25/2007 | | | | | |
| Thurs | 7/26/2007 | | | | | |
| Fri | 7/27/2007 | | | | | |
| Sat | 7/28/2007 | | | | | |
| Sun | 7/29/2007 | | | | | |
| Mon | 7/30/2007 | | | | | |
| Tues | 7/31/2007 | | | | | |
| Wed | 8/1/2007 | | | | | |
| Thurs | 8/2/2007 | | | | | |
| Fri | 8/3/2007 | | | | | |
| Sat | 8/4/2007 | | | | | |
| Sun | 8/5/2007 | | | | | |
| Mon | 8/6/2007 | 10:58 AM | $ | 6,990.00 | | 722 H Street, NE, Washington, DC |
| | 8/6/2007 | 2:47 PM | $ | 4,500.00 | $  11,490.00 | 722 H Street, NE, Washington, DC |
| Tues | 8/7/2007 | 11:31 AM | $ | 4,300.00 | | 722 H Street, NE, Washington, DC |
| Wed | 8/8/2007 | 2:53 PM | $ | 5,800.00 | | 722 H Street, NE, Washington, DC |
| Thurs | 8/9/2007 | | | | | |
| Fri | 8/10/2007 | | | | | |
| Sat | 8/11/2007 | | | | | |
| Sun | 8/12/2007 | | | | | |
| Mon | 8/13/2007 | 11:50 AM | $ | 9,840.00 | | 722 H Street, NE, Washington, DC |
| | 8/13/2007 | 1:19 PM | $ | 9,000.00 | $  18,840.00 | 722 H Street, NE, Washington, DC |
| Tues | 8/14/2007 | 1:35 PM | $ | 9,790.00 | | 722 H Street, NE, Washington, DC |
| Wed | 8/15/2007 | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Thurs | 8/16/2007 | 2:42 PM | $ | 9,700.00 | | 722 H Street, NE, Washington, DC |
| Fri | 8/17/2007 | | | | | |
| Sat | 8/18/2007 | | | | | |
| Sun | 8/19/2007 | | | | | |
| Mon | 8/20/2007 | | | | | |
| Tues | 8/21/2007 | | | | | |
| Wed | 8/22/2007 | | | | | |
| Thurs | 8/23/2007 | 4:10 PM | $ | 1,405.00 | | Greenspring Station |
| Fri | 8/24/2007 | | | | | |
| Sat | 8/25/2007 | | | | | |
| Sun | 8/26/2007 | | | | | |
| Mon | 8/27/2007 | | | | | |
| Tues | 8/28/2007 | | | | | |
| Wed | 8/29/2007 | | | | | |
| Thurs | 8/30/2007 | 2:14 PM | $ | 5,000.00 | | 722 H Street, NE, Washington, DC |
| Fri | 8/31/2007 | | | | | |
| Sat | 9/1/2007 | | | | | |
| Sun | 9/2/2007 | | | | | |
| Mon | 9/3/2007 | | | | | |
| Tues | 9/4/2007 | Unk | $ | 4,000.00 | | Bowie Town Center, MD |
| Wed | 9/5/2007 | 4:21 PM | $ | 6,000.00 | | 722 H Street, NE, Washington, DC |
| Thurs | 9/6/2007 | | | | | |
| Fri | 9/7/2007 | | | | | |
| Sat | 9/8/2007 | | | | | |
| Sun | 9/9/2007 | | | | | |
| Mon | 9/10/2007 | 12:09 PM | $ | 9,720.00 | | Bowie Town Center, MD |
| | 9/10/2007 | 12:13 PM | $ | 8,000.00 | $ 17,720.00 | 722 H Street, NE, Washington, DC |
| Tues | 9/11/2007 | | | | | |
| Wed | 9/12/2007 | | | | | |
| Thurs | 9/13/2007 | | | | | |
| Fri | 9/14/2007 | 2:50 PM | $ | 9,800.00 | | 722 H Street, NE, Washington, DC |
| Sat | 9/15/2007 | | | | | |
| Sun | 9/16/2007 | | | | | |
| Mon | 9/17/2007 | | | | | |

| Day | Date | Time | | Amount | Location |
|---|---|---|---|---|---|
| Tues | 9/18/2007 | | | | |
| Wed | 9/19/2007 | 12:34 PM | $ | 7,500.00 | Port Towns |
| Thurs | 9/20/2007 | | | | |
| Fri | 9/21/2007 | | | | |
| Sat | 9/22/2007 | | | | |
| Sun | 9/23/2007 | | | | |
| Mon | 9/24/2007 | | | | |
| Tues | 9/25/2007 | Unk | $ | 4,500.00 | Port Towns |
| Wed | 9/26/2007 | | | | |
| Thurs | 9/27/2007 | | | | . |
| Fri | 9/28/2007 | | | | |
| Sat | 9/29/2007 | | | | |
| Sun | 9/30/2007 | | | | |
| Mon | 10/1/2007 | Unk | $ | 6,150.00 | 722 H Street, NE, Washington, DC |
| Tues | 10/2/2007 | 3:08 PM | $ | 9,000.00 | 722 H Street, NE, Washington, DC |
| Wed | 10/3/2007 | | | | |
| Thurs | 10/4/2007 | | | | |
| Fri | 10/5/2007 | | | | |
| Sat | 10/6/2007 | | | | |
| Sun | 10/7/2007 | | | | |
| Mon | 10/8/2007 | | | | |
| Tues | 10/9/2007 | 1:46 PM | $ | 7,800.00 | 722 H Street, NE, Washington, DC |
| Wed | 10/10/2007 | | | | |
| Thurs | 10/11/2007 | 2:28 PM | $ | 4,800.00 | Port Towns |
| Fri | 10/12/2007 | | | | |
| Sat | 10/13/2007 | | | | |
| Sun | 10/14/2007 | | | | |
| Mon | 10/15/2007 | 4:16 PM | $ | 9,000.00 | Port Towns |
| Tues | 10/16/2007 | | | | |
| Wed | 10/17/2007 | | | | |
| Thurs | 10/18/2007 | | | | |
| Fri | 10/19/2007 | | | | |
| Sat | 10/20/2007 | | | | |
| Sun | 10/21/2007 | | | | |
| Mon | 10/22/2007 | 3:11 PM | $ | 1,300.00 | Port Towns |
| Tues | 10/23/2007 | | | | |
| Wed | 10/24/2007 | | | | |
| Thurs | 10/25/2007 | 3:28 PM | $ | 1,200.00 | Seabrook |
| Fri | 10/26/2007 | | | | |
| Sat | 10/27/2007 | | | | |
| Sun | 10/28/2007 | | | | |

| Mon  | 10/29/2007 |         |    |            |            |
|------|------------|---------|----|------------|------------|
| Tues | 10/30/2007 | 2:06 PM | $  | 9,000.00   | Port Towns |
|      |            |         | $  | 527,105.00 |            |

## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED
## FROM THE BUSINESS OFFICE OF ACE IMPORTS

For the period from August, 2004 through the execution date of this warrant, evidence relating to structuring the cash deposits from the business of ACE Imports, in violation of 31 U.S.C. Section 5324, including:

A.  RECORDS

1.  Records, books, computers, receipts, notes, ledgers, invoices, bills of sales, contracts, agreements, liens, financing statements, payment records, temporary tags, Form 8300s, billing statements, documents, and materials containing information of past and present criminal activity related to the aforementioned criminal activity.  The terms "records," "documents," and "materials" includes records in all forms, such as those on paper, in any photographic form, in any mechanical form, and any form that is stored in electronic or magnetic form on hard drives, compact discs, zip disks, magnetic tapes or floppy disks.

2.  Bank statements, deposit slips, canceled checks and related records, investment account statements, money order and cashier's checks, passbooks, and money wrappers related to ACE Imports' and/or Jeffrey O. Ogunbiyi's finances.

3.  Any records, notes, accounting ledgers, financial statements, spreadsheets, reports, and income tax records related to the operations of ACE Imports and/or Jeffrey Ogunbiyi's personal financial condition.

4.  Addresses and/or telephone books, Rolodex indices, and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers of financial institutions, and other individuals or businesses with whom a financial or business relationship exists.

5.  Correspondence or notices from banks or creditors, invoices from creditors, applications for bankruptcy and related records, and any other documents relating to the personal financial condition of ACE Imports and/or Jeffrey Ogunbiyi.

6.  Any and all fruits, instrumentalities, and evidence of the crime of 31 U.S.C. Section 5324(a)(structuring).

B.  HARDWARE

7.  Computer hardware, consisting of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data.  Hardware includes, but is not limited to, any data-processing devices (such as central processing units, main frame servers, memory typewriters, and self-contained "laptop" or "notebook" computers, "palm pilots," and "schedulers"); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, removable magnetic disk storage drives and disks, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, programmable telephone dialing or signaling devices, and electronic tone-gathering devices); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

C.  SOFTWARE

8.  Computer software consisting of digital information which can be interpreted by a computer and any of its related components to direct the way they work.  Software is stored in electronic, magnetic, optical, or other digital form.  It commonly included programs to run

operating systems, applications (like word-processing, graphics, or spreadsheet programs),

utilities, compilers, interpreters, and communications programs.

D.  DOCUMENTATION

9.  Computer-related documentation consisting of written, recorded, printed, or

electronically stored material which explains or illustrates how to configure or use the computer

hardware, software, or other related items.

E.  PASSWORDS and DATA SECURITY DEVICES

10.  Computer passwords and other data security devices that are designated to restrict

access to or hide computer software, documentation, or data.  Data security devices may consist

of hardware, software, or other programming code.  A password usually operates as a sort of

digital key to "unlock" particular data security devices.  Data security hardware may include

encryption devices, chips, and circuit boards.  Data security software or digital codes may include

programming code that creates "test" keys or "hot" keys, which perform user-defined security-

related functions when activated.  Data security software or code which might also encrypt,

compress, hide or "booby-trap" protected data to make it inaccessible or unreadable as well as

reverse the process to restore the data.

11.  Logs of electronic communications, disks of communications, hard copies of

communications, audio cassette tapes of communications, calendars, appointment books,

telephone number lists, incoming and outgoing facsimile messages, and any documentation,

telephone records, bank account information or wire transfer information.

12.  The terms "records," "documents," and "materials" include all of the foregoing items

of evidence in whatever form and by whatever means such records, documents, or materials,

their drafters, or their modifications may have been created or stored, including, but not limited

to, any handmade form (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); any mechanical form (such as tape recordings, cassettes, compact discs, or any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, zip disks, CD-ROMs, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as printouts or readouts from magnetic storage devices).

13. Any and all fruits, instrumentalities, and evidence (at this time unknown) of the crime of 31 U.S.C. Section 5324 (structuring).

## ATTACHMENT C

## DESCRIPTION OF PREMISES TO BE SEARCHED

**The office of ACE Imports located in a trailer on a used car sales lot at 1715 Bladensburg Road N.E., Washington, D.C. 20002.**  ACE Imports consists of a used car lot surrounded by a chain link fence.  There is a white sign with black letters attached to the fence at the corner of Rand Place, N.E. and Bladensburg Road, N.E. that reads, "ACE IMPORTS QUALITY USED CARS (202) 398-5280."  The only structure on the used car sales lot is a single wide trailer and is believed to be the office for ACE Imports.  The sides of the trailer are white with glass windows and the top of the trailer is brown.  The entrance to the trailer is a glass door located in the center of the trailer that faces Bladensburg Road, N.E.  Near the top of the glass entrance door in the center are white numbers that read "1715".  The entrance to the used car sales lot and the office is gained through a gate in the chain link fence located on the Rand Place, N.E. side of the property.  On the right side of the entrance gate there is a white sign with red letters that reads "WALK IN RIDE OUT."  There are currently a number of cars sitting on the used car lot.